

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FLEX ENTERPRISES LP, FLEX ENTERPRISES LP D/B/A EP FITNESS, AND FLEX ENTERPRISES MANAGEMENT LLC, | § § § § | No. 08-12-00123-CV<br><br>Appeal from the |
| Appellants, | § | County Court at Law #5 |
| v. | § | of El Paso County, Texas |
| VICTOR CISNEROS, | § | (TC# 2011-3110) |
| Appellee. | § | |

## O P I N I O N

Flex Enterprises LP, Flex Enterprises LP d/b/a EP Fitness, and Flex Enterprises Management LLC (collectively "Flex" or "Appellants") appeal the trial court's denial of Flex's Motion to Compel Arbitration in a lawsuit filed by Victor Cisneros ("Cisneros" or "Appellee"). In a single issue, Flex asserts that the trial court erred in denying its Motion to Compel on the basis of Cisneros's argument that the arbitration agreement was illusory and therefore unenforceable. For the reasons set out below, we affirm.

## BACKGROUND

Cisneros was hired by Flex in 1998 and worked for Flex for over twelve years before he was terminated in January of 2011. Flex provides its employees with an Employee Manual

("Manual") containing Flex's employee policies and procedures. In the Manual, Flex reserves the right to "MODIFY, REVOKE, SUSPEND, TERMINATE OR CHANGE ANY OR ALL SUCH PLANS, POLICIES OR PROCEDURE, IN WHOLE OR IN PART, AT ANY TIME, WITH OR WITHOUT NOTICE AND WITH OR WITHOUT CAUSE." [Emphasis in orig.]. The Manual includes Flex's arbitration policy, providing that certain claims must be submitted to binding arbitration. The Manual lists five classes of claims subject to arbitration, including "any other employment issue itemized in the Employee Acknowledgement and Arbitration Agreement . . . ." Excluded from the arbitration policy are claims related to the non-disclosure, non-compete, and non-interference provisions discussed in the Manual. The Manual explains how to commence arbitration and references the Employee Acknowledgement and Arbitration Agreement ("EAAA") several times in setting out the procedure to initiate an arbitration.

The EAAA does not reserve any rights in favor of Flex relating to arbitration. At the outset of the EAAA, employees acknowledge that "I understand that EP Fitness has adopted a binding arbitration policy, which is effective as of the date I sign this acknowledgment" and provides a list of statutory and other claims that the arbitration policy applies to. The EAAA sets the venue for the arbitration and other procedures. It specifically excludes claims relating to the non-disclosure, non-compete, and non-interference provisions discussed in the Manual. In the EAAA, Flex states that the arbitrator shall apply Texas and federal law as required, and that the Federal Arbitration Act ("FAA") applies to the interpretation, enforcement, and proceedings "under this arbitration provision."

Cisneros executed an Employee Acknowledgment on February 28, 2003, stating that he had received a copy of the Manual including the appendix of forms in the Manual. In this

2

document, Cisneros acknowledged that Flex "reserves the right to change any of the policies or procedures described" in the Manual at any time, with or without notice or cause. That same day, Cisneros signed an EAAA.

Following his termination, Cisneros filed a lawsuit alleging age discrimination. Flex answered and filed a Motion to Compel Arbitration ("Motion"). The trial court held a hearing on the Motion on March 23, 2012. The sole witness at the hearing was Sam Henry ("Henry"), Flex's chief financial officer. Henry testified that the Manual contained an arbitration agreement, which Cisneros executed. He further testified that the EAAA was not part of the Manual and was a stand-alone agreement, which Cisneros executed in connection with non-compete and non-disclosure agreements. On cross-examination, Henry testified that the reference to the "binding arbitration policy" in the EAAA referred to the arbitration policy in the Manual. Henry agreed that there was no exception in the arbitration policy for Manual's prohibition of Flex's right to alter or amend policies in the Manual, and no such exclusion appeared in the Employee Acknowledgment either.

At the conclusion of the hearing, the trial court denied Flex's Motion, and Flex appealed.

## DISCUSSION

In a single issue, Flex asserts that the trial court erred in denying its Motion to Compel on the basis of Cisneros's argument that the arbitration agreement was illusory and therefore unenforceable.

Section 51.016 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order denying a motion to compel arbitration under the Federal Arbitration Act. TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2013). Whether an arbitration

3

agreement is enforceable is a question of law which we review *de novo*. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A trial court abuses its discretion when it refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding).

"Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005)(orig. proceeding). Documents incorporated by reference in a contract, become part of that contract. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007)(orig.proceeding)(per curiam). Furthermore, "[l]ike other contracts, arbitration agreements must be supported by consideration." *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex.App.--Houston [14th Dist.] 2006, no pet.). "Mutual promises to submit employment disputes to arbitration constitute sufficient consideration to support an arbitration agreement; however, if the employer can avoid its promise to arbitrate, the agreement is illusory." *Id*. at 868. "When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)(orig. proceeding)(per curiam). If a promise to arbitrate cannot be avoided by amendment or termination, the arbitration agreement is valid and non-illusory. *In re Halliburton*, 80 S.W.3d at 569; *In re Datamark, Inc.*, 296 S.W.3d 614, 616 (Tex.App.--El Paso 2009, orig. proceeding).

If an employer can unilaterally modify or terminate the purported agreement, without prior notice to an employee, that agreement is based upon an illusory promise and thus not enforceable. *See In re C&H News Co.,* 133 S.W.3d 642, 647 (Tex.App.--Corpus Christi 2003, orig. proceeding)(purported agreement was unenforceable because employer "retain[ed] the ability to

4

pick and choose the claims it[ ] want[ed] to arbitrate"); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 387-89 (Tex.App.--Houston [14th Dist.] 1998, writ dism'd w.o.j.)(agreement was unenforceable because employer reserved the right to rescind or amend it "'as it deemed appropriate in its sole and absolute discretion"). However, a clause providing for the modification or termination of the arbitration agreement that requires an employer to give notice prior to when the modification or termination becomes effective does not, by itself, make an agreement illusory. *See In re Halliburton*, 80 S.W.3d at 569–70 (because the employer was required to give notice before a modification or termination of an arbitration agreement became effective, the employer could not "avoid its promise to arbitrate by amending the provision or terminating it altogether").

An illusory promise in one document does not necessarily render a second, separate arbitration agreement unenforceable. *See In re Polymerica, LLC*, 296 S.W.3d 74, 75–6 (Tex. 2009)(orig. proceeding)(per curiam)(employee handbook that could be modified at any time, did not render an entirely separate arbitration agreement unenforceable); *In re 24R*, 324 S.W.3d at 567–68 (employer's right to unilaterally change personnel policies as stated in an employee manual, did not extend to an arbitration agreement that was a separate, stand-alone contract). However, if an employee handbook containing the right to change policies without prior notice is incorporated by reference into an arbitration agreement, the promise to arbitrate is illusory and unenforceable. *See In re 24R*, 324 S.W.3d at 567–68, *citing In re C&H News Co.*, 133 S.W.3d at 646-47.

In the instant case, Flex asserts that the EAAA is separate and distinct from the arbitration provision found in the Manual. Flex contends that as a stand-alone document, the EAAA is a

5

separate contract and is enforceable on its own as it does not lack consideration, is not illusory and is enforceable. We disagree.

We find that the policy and EAAA presented in the instant case are similar to the facts seen in *C&H News*. In *C&H News*, the employee signed a one-page "Mutual Agreement to Arbitrate" that incorporated an employee handbook by reference. *In re C&H News,* 133 S.W.3d at 646. The employee handbook there stated all claims would be submitted to "binding arbitration as provided in the Handbook." *Id.* However, the introductory section of the handbook, provided "that the content therein 'may, and likely will, be changed, modified, deleted or amended from time to time as the [employer] deems appropriate, with or without prior notification to employees.'" *Id.* The handbook also excluded specific claims from the arbitration policy. *Id.* The court of appeals in *C&H News* found that the general terms of the separate agreement to arbitrate were "clearly subject to, and modified by, the specific terms of the employment handbook." *Id.* Reading the terms together, because the terms in the handbook were incorporated into the arbitration agreement, the court of appeals held that the purported arbitration agreement allowed the employer to unilaterally amend the handbook's terms and therefore, allowed the employer to unilaterally amend the types of claims subject to arbitration. *Id.* at 647. The court concluded that this reservation rendered the arbitration agreement unenforceable as supported only by an illusory promise. *Id.*

The policy set out in the Manual in the case before us lists a number of claims which are subject to arbitration, including discriminatory treatment of an employee, harassment, appealing a disciplinary action, discharge of an employee, and "any other employment issue itemized in the Employee Acknowledgement and Arbitration Agreement." The policy also excludes several

6

types of claims from the arbitration policy. The Manual in the instant case contains a reservation of rights in favor of Flex, allowing it to "modify, revoke, suspend, terminate or change any or all such plans, policies or procedure, in whole or in part, at any time, with or without notice and with or without cause." The EAAA has employees acknowledge that "I understand that EP Fitness has adopted a binding arbitration policy, which is effective as of the date I sign this acknowledgment" and lists statutory and other claims that the arbitration policy applies to, while noting the same excluded claims set out in the Manual. At the hearing on the Motion, Henry testified that the "binding arbitration policy" referred to in the EAAA is the policy set out in the Manual.

We find that the general terms of the EAAA are subject to specific terms of the Manual, which allow the policy and therefore, the scope and applicability of the claims subject to the EAAA, to be modified unilaterally by Flex. *See In re C&H News*, 133 S.W. 3d at 646-47. This makes the EAAA supported by an illusory promise and therefore, unenforceable. *Id.*

We conclude that the trial court did not err in denying Flex's Motion to Compel Arbitration, as the purported arbitration agreement is unenforceable.

## CONCLUSION

Having overruled Flex's sole issue, the ruling of the trial court is hereby affirmed.


August 7, 2014

                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.


7